AMAZING STORES, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 88–1693.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 14, 1989.

Decided Oct. 20, 1989.

Laurance E. Baccini, Philadelphia, Pa. of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of the Court, with whom Thomas E. Patton, Washington, D.C. was on the brief, for petitioner.

Joseph A. Oertel, Atty., NLRB, with whom Paul J. Spielberg, Deputy Asst. Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, NLRB, Washington, D.C. were on the brief, for respondent. Frederick C. Havard and Collis Suzanne Stocking, Attorneys, NLRB, Washington, D.C. also entered appearances for respondent.

Before MIKVA, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Petitioner, Amazing Stores, Inc., challenges an NLRB order arising from its unfair labor practices in a December 1985 representation election. Petitioner claims that the Board's use of a *"Gissel"* remedy, setting aside the election and requiring it to recognize the union for the purpose of collective bargaining, was inappropriate because there had been substantial turnover in the workforce since the earlier election campaign. Petitioner also argues that the Board's findings of outrageous and pervasive misconduct were not supported by substantial evidence, and that the Board did not support its conclusion that a card-based majority of employees favored union repre-

sentation. We find that imposition of a *Gissel* bargaining order was warranted and that the Board's order should be enforced.

## Background

In *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court established that the NLRB may issue a bargaining order (*"Gissel* order") to remedy violations of section 8(a) of the National Labor Relations Act ("NLRA") if the Board finds, on balance, that the effects of those past practices make a fair election unlikely. *Id.* at 614–15, 89 S.Ct. at 1940–41. This case presents us with an opportunity to clarify the amount of consideration that the NLRB must accord subsequent employee turnover in determining whether an employer's misconduct continues to prevent the possibility of a fair election. Based upon our review of the record, we find that the Board gave adequate consideration to employee turnover and was justified in concluding that the effects of petitioner's outrageous and pervasive misconduct are likely to taint any future elections.

Petitioner, Amazing Stores, Inc., owns and operates a chain of retail discount stores in greater Philadelphia. On October 29, 1985, a representative of the United Food and Commercial Workers, Local 1537, AFL–CIO ("Union") met with a group of Amazing Stores' stock clerks, drivers, and cashiers for the purpose of launching a representation election. Of the 36 members of the "bargaining unit," 22 returned cards expressing a desire for Union representation, five of which were dated before October 29.

When Amazing Stores' owners subsequently refused to recognize the Union for purposes of collective bargaining, the Union initiated a representation election. Prior to the election, two of the Stores' owners, Jack Segal and Joseph Lieberman, began a systematic effort to discourage Union support. Specifically, the Board found that they discharged an employee for Union organizing, delayed and in some cases denied Christmas bonuses, coercively interrogated employees and created an impres-

sion that they were under surveillance, promised advancement for voting against the Union, and threatened to sell the stores to outside investors if the Union prevailed.

Following the election, the Union filed charges with the NLRB. After a hearing in November 1986, the ALJ found that Amazing Stores had engaged in unfair labor practices in violation of NLRA § 8(a)(1), (3), and (5). The ALJ recommended that Amazing Stores be ordered to stop these practices and restore all employees to the status quo. He further recommended that the election be set aside and the employer be issued a *"Gissel"* order—requiring it to bargain with the Union. Decision and Report on Objections, 4–RC–19096 (ALJ Decision) at 19–20.

Before the Board issued its Decision and Order (Board Order) in June 1988, Amazing Stores filed a Motion to Reopen the Hearing to challenge the *Gissel* order because there had been 95% employee turnover in the bargaining unit since the close of the hearing. The Board denied this motion and affirmed the ALJ's conclusions in relevant part.

## I

### Preliminary Claims

Amazing Stores makes two preliminary claims respecting the Board's decision to issue a *Gissel* order: first, the order is not supported by substantial evidence of misconduct sufficiently serious to warrant the issuance of a bargaining order in lieu of a rerun election, and second, the Board lacked evidence of preexisting majority support to justify the order. We reject both contentions.

We find ample evidence to support each of the ALJ's conclusions. Furthermore, we note that the ALJ's unchallenged findings are alone sufficient to support the Board's conclusions. Petitioners do not dispute that the owners of the company threatened to sell the plant, coercively interrogated employees, promised improved working conditions, solicited grievances, delayed the granting of Christmas bonuses, and denied a bonus to two employees. We have held

that a similar litany of unfair labor practices supported a *Gissel* order in *Road Sprinkler Fitters Local Union No. 669 v. NLRB (John Cuneo, Inc.)*, 681 F.2d 11, 24 (D.C. Cir.1982). There, we concluded that coercive interrogation, creating the impression of surveillance, prohibiting Union discussion, and delaying reinstatement of workers were sufficient to justify issuance of a bargaining order. *Id.* at 23–24. Thus, both on the merits and on the basis of the uncontested evidence, we affirm the NLRB's finding of substantial evidence to support a *Gissel* order.

Similarly, Amazing Stores' challenge to the sufficiency of the card-based majority is meritless. Amazing Stores' sole contention is that 5 of the 22 cards favoring the Union were dated before the organizing campaign began on October 27. Amazing Stores argues that this raises "serious doubts" about the Union's majority status. Amazing Stores, however, has already stipulated to the authenticity of the cards. ALJ Decision at 17–18. Thus, its "argument" is nothing more than a suggestion that a card-based majority existed between October 4 and November 15 rather than between October 29 and November 15: a difference without legal significance. Accordingly, we also affirm the ALJ's finding that there was sufficient objective evidence of a card-based majority to warrant a *Gissel* order.

## II

### The Effect of Significant Turnover

The crux of Amazing Stores' case is that the Board erred in issuing a *Gissel* order without fully considering whether employee turnover may have dissipated any lasting effects of the unfair labor practices. Accordingly, it has requested that the court remand the *Gissel* order to the NLRB to require it to determine and articulate whether turnover or the lapse of time have eliminated the effects of the unfair labor practices.

As noted, *Gissel* orders have been reserved as a remedy for those situations where past unfair practices have been so pervasive and extensive that they effective-ly prevent the holding of a fair election. The *Gissel* Court advised the Board to impose such orders sparingly because they override the election process, thereby foreclosing the employees from directly expressing their preferences. This circuit held in *Peoples Gas System, Inc. v. NLRB*, 629 F.2d 35 (D.C.Cir.1980), that a bargaining order must: (1) give due consideration to the employees' Section 7 right to self-determination; (2) state why the remedy is necessary; and (3) explain why other remedies are inadequate. *Id.* at 46. Amazing Stores contends that the Board failed to satisfy each of these requirements.

Amazing Stores claims that the Board failed adequately to take into account an almost complete turnover of personnel in the bargaining unit since this action started. Thus, it moved to reopen the hearing to submit turnover evidence, a motion the Board addressed in footnote 2 of its Decision and Order. The Board found that since the misconduct was committed by the highest management officials and was directed at virtually every employee in the bargaining unit, it was foreseeable that new employees would learn of the past practices and be deterred from seeking Union representation. Board Order, 289 NLRB No. 24, n. 2. Furthermore, it referred to a section of the ALJ's order in which he stated that he had "no doubt that if ... a second election were to be ordered, Lieberman and Segal would find the means to let their employees know that their joint will is unchanged and that the advent of the Union would mean the end of their connection with Amazing Stores." ALJ Decision at 18.

Amazing Stores rests its claim of inadequate attention to turnover largely upon our statements in *NLRB v. Creative Food Design Ltd.*, 852 F.2d 1295 (D.C.Cir.1988). We there stated that "In evaluating whether the unfair labor practices continue to have 'an *actual chilling* effect on the possibility of a fair and free election,' the Board must determine how many current employees were directly exposed to, and possibly influenced by, the employer's measures." *Id.* at 1302 (citation omitted). Petitioner insists that *Creative Food* requires

that the Board make specific factual findings that the present employees' interests have been affected by the past misconduct.

Petitioner, however, misunderstands our holding in *Creative Food.* Our statements in that case were never meant to suggest that the Board must always adduce direct evidence of the continuing effects of prior misconduct. Rather, determination of whether a *Gissel* order is necessary rests on consideration of both the nature and pervasiveness of the employer's misconduct as well as the amount of turnover. Where the Board finds that a practice is particularly pervasive or enduring, it need make only minimal findings that the effects have not been dissipated by subsequent employee turnover. Conversely, where the practices at issue are not especially pervasive or permanent in nature, the Board needs to make more careful determinations respecting the effect of subsequent employee turnover. *See, e.g., St. Agnes Medical Center v. NLRB,* 871 F.2d 137, 147–49 (D.C.Cir.1989) (remanding a *Gissel* order where findings of unfair practices were largely unsupported and the ALJ made only a conclusory determination about the possibility of conducting a fair election). Here, the Board clearly satisfied *Creative Food's* requirement that it "determine how many current employees were ... possibly influenced by, the employer's measures" (852 F.2d at 1302), by drawing reasonable inferences from the extreme, pervasive, and entrenched character of the misconduct.

This formulation comports with reasoned policy. Where the Board finds that employer misconduct is pervasive and likely to persist despite turnover, these conclusions alone are sufficient to satisfy the turnover inquiry. Forcing the NLRB to question new employees as to their knowledge of earlier representation elections is not only unnecessary to support its conclusion, but also would have the bizarre effect of alerting new employees to their employers' antipathy to union organization. Moreover, by requiring a more elaborate turnover inquiry under these circumstances, companies with naturally high turnover would be tempted to engage in unfair practices, knowing that over the course of protracted administrative proceedings they can outlast any union activists and effectively stall existing momentum for unionization. As we noted in *St. Francis Federation of Nurses & Health Professionals v. NLRB,* 729 F.2d 844, 856 (D.C.Cir.1984), "normal employee turnover [does not] justify displacing the Board's determination.... Imposition of a requirement that the Board consider subsequent events would reward an employer's efforts to postpone enforcement of a remedy by adding further delay to the proceedings."

We find that the Board's explanation was firmly rooted in the record of this case and satisfied all three prongs of *Peoples Gas, supra.* First, the Board reflected due concern for the employees' Section 7 rights by considering the impact of turnover, and determining that it was not sufficient to dissipate management's entrenched and pervasive misconduct. Second, the Board properly explained why a bargaining order was necessary; it noted that the effects of the specific conduct involved here were likely to persist based upon findings that the owners "meant what they said" about closing or selling the stores, and that "given another opportunity, they would resume a pattern of unlawful conduct." ALJ Decision at 18. Finally, the Board properly found that alternative remedies were inadequate given the continuing presence of senior management and testimony that these managers would resume their misconduct. Based on these findings, it was reasonable for the Board to predict that a coercive atmosphere would be "likely to persist" which would frustrate attempts at a fair election. Board Order, 289 NLRB No. 24 at 1–2.

Thus, we find that the Board was justified in determining that a *Gissel* order was warranted. By examining the unique durability of petitioner's past misconduct and the likelihood of its repetition, the Board satisfied the prerequisites that this and other courts have prescribed.

*Affirmed.*